## ADALINE DARLING *et al.*

*v.*

## PETER McDONALD.

1. SERVICES—*whether damages allowed were excessive.* Where a party performed services for a person, about two years before his death, in caring for and nursing him, the proof showing that the services were performed without any special contract as to the compensation; that the services were invaluable; that the deceased was, during the time, afflicted with a cancer in the throat, and that the smell emitted from the throat was very offensive, toward the latter part of the life of the deceased; that, except when on visits to New York City and St. Louis, with the deceased, and the last few months, the services rendered did not prevent the plaintiff from looking after his own business; that the deceased had paid and loaned the plaintiff about $3000 before his death, it was *held*, in a suit by the plaintiff to recover against the estate for his services, that a verdict in favor of the plaintiff for $1420.60 was excessive, and the judgment was reversed for that reason.

2. CONTRACT — *whether certain proposed offers were evidence of one.* Where a party, afflicted with a cancer, proposed that, if a party who was nursing and taking care of him, and who rendered invaluable service, would quit the liquor trade, and form a partnership with another party, in the dry goods business, he would let him have $8000 or $10,000 to purchase an interest in the business, which was never consummated, and it appeared there was an intimate friendship between them, it was *held*, that such proposal was not evidence of a special contract to pay such sum for the party's services.

APPEAL from the Circuit Court of Richland county; the Hon. JAMES C. ALLEN, Judge presiding.

Mr. AARON SHAW, and Messrs BELL & GREEN, for the appellants.

Messrs. WILSON & HUTCHINSON, and Mr. J. P. ROBINSON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee brought an action of assumpsit, in the Richland circuit court, against appellants, to recover for services, or on a contract, by appellants' testator, to give appellee a large sum

of money for services in nursing and caring for him. The declaration contained the common counts, to which the general issue and a plea of set-off were filed.

A trial was had before the court and a jury, resulting in a verdict in favor of plaintiff for $1420.60. A motion for a new trial was entered and overruled, and judgment rendered on the verdict, from which defendants have appealed to this court.

It appears that Andrew Darling, in his lifetime, had a cancer in his throat, from which he suffered several years, and finally died. It also appears that appellee, for about two years before the death of Darling, was unremitting in his care of and his attentions to him. Appellee went twice with deceased to New York City, where they remained for a considerable time. One of these visits there lasted over six weeks. He also accompanied him twice to St. Louis. His throat was operated upon and a tube inserted. Appellee accompanied him, on these occasions, to nurse and take care of him.

The evidence shows that, in addition to accompanying him on these visits to the cities, he was in almost daily attendance on Darling for near two years before his death, nursing him, and dressing and applying caustic to his throat; that it was very offensive, as it emitted an odor described by a witness as resembling the smell of rotten eggs; and Mr. Anderson, the pastor of the church to which Darling belonged, testified that appellee's services were "invaluable; that he could not think of any amount that would be sufficient to pay for the services rendered. McDonald did more than I can imagine any one doing for another. I never saw in my life as remarkable services rendered the sick as were rendered by McDonald. No ordinary servant could have done what McDonald did."

Again, Dr. Brunbold testified: "If I were worth $100,000, or more, and had the disease of which Darling died, I would go to a friend, and say to him that I would save him from loss arising from neglect of business caused by his attendance

on me. I hardly think a mere money consideration would buy such services. No ordinary person can perform these duties."

These witnesses were well informed as to the duties performed by appellee. They are supported by other witnesses. The removing of the bandages and dressing the throat was tedious and very disagreeable, and occupied about an hour daily; and whilst so engaged, if Darling coughed, it spattered the secretions from the throat, and the nitrate of silver appellee applied, over his person and in his face. coloring his face and endangering his eyes. This he did frequently, and sometimes daily, after the tube was inserted in Darling's throat, until his death.

Appellee testified that he would not have performed this service for money alone, and that he could only have been induced to do so by reason of his friendship for the man; and all of the evidence shows that appellee was greatly attached to him, for the loan of money and acts of kindness Darling had extended to him, all of which appellee held in grateful remembrance.

Appellee was, during the time, engaged in keeping a saloon, and Darling was anxious to get him to change his business to a more reputable occupation. He, therefore, saw Hollister, to know whether he would take him as a partner in his business, when he signified that he would. Darling said he would give appellee $8000 or $10,000, provided Hollister would receive him as a partner; that he intended to give appellee that amount. On being informed by Hollister that it would require that amount to buy out his partner, Darling said he wanted to furnish appellee with the means. Other witnesses corroborate Hollister, and testify to similar statements, at other times; and the evidence tends to show that he made similar statements and promises to appellee in person. The arrangement to become a partner of Hollister was, however, never consummated.

It also appears that Darling, on one occasion, gave appel-
lee $500, and loaned him various sums of money, on other
occasions, amounting, in all, to $2000 and over, or perhaps
something above $3000, of the payment of which there seems
to be no evidence in the record.

Again, a number of witnesses testified that appellee had
stated, on various occasions, in one form or another, that he
made no claim for services. He said, to some, that he made
no charge for what he had done; to others, that he expected
nothing therefor, nor did he expect Darling to make any
bequest in his favor in his will; to others, he said he was
overpaid, and never could repay Darling for his kindness.

The question, then, arises, does this evidence sustain the
verdict? It is almost unprecedentedly large. It amounts to
more than $3000 a year—no doubt, more than he could make
in any other business, by the employment of his entire time
and capital, and it is probably as much, or more than the
majority of professional men in the country earn, after spend-
ing much time and large sums to prepare themselves for their
calling, to say nothing of their experience, in their professions.
Many physicians of learning and experience, it is believed,
are unable to earn so much. Whilst, if appellee was entitled
to recover, it should only be for a sum which, under all the
circumstances, is reasonable and just. He was absent from
home and his business, we infer—but it does not clearly ap-
pear—not exceeding three months, if so long a time. He
gave his attention to his business the balance of the time,
subject to the interruptions incident to the attention he gave
to Darling, as required by his malady. That it operated as
an interruption, to some extent, to his business, is no doubt
true; but he so arranged it that he gave his attention at times
as to least interfere, and to occasion the least loss of time from
his business. In the earlier stage of the disease, appellee seems
to have lost but little time, except when absent with Darling,
when he visited the cities for medical advice. It was not
until the disease had advanced, and the operation had been

performed, that the patient required much attention or skilful nursing. It was but some months before his death that the required services increased, and became so disagreeable; and even then the services were rendered, to the greater extent, at night, appellee sleeping at Darling's house, for the purpose.

At no time did it require or occupy all of appellee's time. That his services were skilful, valuable, and rendered with a kindness that attached Darling to him, there can be no doubt. His devotion to Darling seems to have awakened in him feelings of gratitude and kindness that made him anxious to manifest his feelings in a substantial manner. Hence, he loaned him money, for which, we infer, he charged no interest. He was also anxious to promote appellee's welfare, by obtaining a change of his business to a more reputable calling; but notwithstanding all this, if appellee is entitled to recover for his services, we are compelled to say they are much too high under a *quantum meruit,* and the evidence of the value of the services does not sustain the amount of the finding. The damages are excessive.

But it is urged that the evidence warranted the jury in finding that there was a contract that Darling should pay appellee $8000 or $10,000 for the services he had rendered previous to the time Darling spoke of letting appellee have that sum, and for the services he might render after that time. When the proposition was made, there was no allusion made to services rendered in the past, or that should be in the future. The sum named was indefinite, being $8000 or $10,000. Men, in contracting, never make such loose and indefinite bargains. When the price is agreed upon, it is almost invariably specific and certain; nor does it appear, from any thing in the record, that the minds of the parties ever met on this or any other sum as compensation. There was no time during the life of Darling that he could claim that he had a contract with appellee that he could insist should be performed, or that he could enforce. And so with

appellee; he could not have supposed that he had a valid, binding contract that Darling should pay him either of these sums for his services.

On the contrary, we think the evidence clearly shows that the promise was conditional, that appellee should purchase Gardner's interest in his firm before Darling expected or promised to furnish the money—whether as a gift or a loan does not distinctly appear. There is no evidence that Darling ever said he would give or pay the money as compensation for nursing him; but he seems only to have intended to advance it, to get appellee out of the liquor trade and into the more reputable business of selling dry goods. There is no evidence that he at any time intended to advance the money for any other reason or purpose. There was no understanding by appellee that it was to be otherwise advanced. The record seems to be barren of all evidence to sustain the proposition to advance money as a consideration for services, either performed or to be performed. On the contrary, the promise, if one was ever made, was on a condition that was never performed; and the statement seems invariably to have been made to other persons than the appellee, unless possibly on one occasion, when he may have so stated to appellee, but that is by no means certain. We are, therefore, clearly of opinion that, if appellee has any right to recover at all, it must be for the reasonable value of his services.

The judgment of the court below is reversed and the cause remanded.                              *Judgment reversed.*